

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00017-CV

_____

IN THE INTEREST OF S.B. AND K.B., CHILDREN

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-684420-20

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

## I.  Introduction

Appellant J.B. (Father), appearing pro se, appeals from a final order in a suit to modify the parent–child relationship.  In three issues, Father challenges (1) the increase in "child/medical support" that he was ordered to pay, (2) the opposing counsel's claims that Father was underemployed, and (3) the portion of the order requiring him to pay the entire cost of the airfare to transport the children to visit him in California instead of requiring Appellee C.B. (Mother) to pay half.  After reviewing the partial reporter's record, we hold against Father, but we correct a clerical error in the trial court's final order.  Accordingly, we affirm the trial court's final order as modified.

## II.  Background

Father and Mother had two children that were born of their marriage—a son in 2010 and a daughter in 2012.  Father and Mother divorced in April 2019.  The final decree of divorce ordered Father to pay $625 monthly for child support and $50 monthly for medical support.  After the divorce decree was rendered, the parties began filing motions to modify the decree's terms.

### A.    The Filings

In October 2020, Father filed a "Counter-Petition to Modify Parent–Child Relationship," requesting to modify an order entered in October 2019.[1]  Specifically, Father requested that the trial court order (1) the utilization of AppClose to help

---

[1]The record does not contain a copy of the October 2019 order.

facilitate a peaceful co-parenting relationship and (2) the cost of the children's travel to visit Father in California be split equally among the parties.

The Office of the Attorney General intervened as a necessary party. The Attorney General requested that the trial court make appropriate orders for current child support, medical support, and dental support for the children, including temporary support pursuant to Texas Family Code Section 105.001.

Mother answered and later filed a motion for additional temporary orders and requested the trial court to increase Father's child-support payments in accordance with the child-support guidelines.

In February 2021, an associate judge ordered the parents to use an app for all non-emergency communication, set the drop-off and pick-up location as Dallas Love Field Airport, and denied Father's request to split travel costs. The trial court later signed temporary orders reflecting these changes.

Father filed a "First Amended Counterpetition to Modify Parent–Child Relationship" in November 2021, still requesting to modify the October 2019 order. Father requested, among other things, that aspects of the possession schedule be modified, that the parties no longer be required to communicate via AppClose, and that his support obligation be decreased.

In April 2022, the trial court signed a temporary order increasing Father's monthly cash medical support obligation from $50 to $312.

In September 2022, Mother filed a motion for enforcement of the child-support and medical-support order. Mother alleged that Father had a child-support arrearage of $1,718.00 and a cash medical-support arrearage of $1,108.82.

In October 2022, Mother filed a "Counterpetition to Modify Parent–Child Relationship." Mother requested that all exchanges of the children occur at the nearest airport to her residence, that Father be ordered to give advance notice of flights, that he be responsible for all travel costs, that Father's child-support obligation be increased, that any increase be ordered to apply retroactively, and that Father be ordered to pay Mother's reasonable attorneys' fees.

Three days later, Father filed a "Counterpetition to Modify Parent–Child Relationship." Father requested "airfare relief"—that Mother pay for half of the travel expenses required for the children to visit him—and more phone or video access to his children.

On December 6, 2022, Father filed a "Statement of Inability to Afford Payment of Court Costs or an Appeal Bond," stating that his monthly wage as a delivery driver is $1,097; that he had monthly expenses of $4,453; and that he had $5,500 in credit-card debt.

## B.     The Modification Hearing

The trial court held a hearing on the competing motions to modify the parent–child relationship.[2]  Father testified that he and Mother had lived in New Mexico with their children and that after he and Mother had separated, she had moved to Amarillo and then to Las Vegas.  Father said that while Mother was living in Las Vegas, he decided to separate from the military and accepted a job at Lockheed in California, which was three hours from where Mother was residing.  Before Father started the job in California, Mother relocated back to Amarillo.  Shortly after the divorce, Mother moved to Arlington.  Father said that he had paid for the children's travel since he and Mother had separated, that he had asked Mother to pay half, and that she had declined.

When Mother began asking Father to cover half the cost of equipment for the children's extracurricular activities and to purchase phones for the children, Father moved to a contract position within Lockheed that paid overtime but required him to work overseas twelve hours per day, seven days per week.  Father said that the work, which involved manual labor, was hard on his body because he had past unaddressed injuries from his time in the military, and he ended up hurting his knee.  The contract work also caused him to miss his summer visitation and weekly phone calls with his

---

[2]Based on Father's designation of the record, the three-volume reporter's record contains only the master index in volume one, "Excerpt – Testimony of [Father]" in volume two, and exhibits—one from the Attorney General's Office and one from Mother—in volume three.

5

children. As a result, Father decided to quit his contract position at Lockheed and to leave the aerospace industry because it was too hard on his body.

In August 2022, Father obtained a part-time job delivering food to the elderly. Father said that he had been advised that if a task is strenuous and hurts him, he should refrain from doing that task, so that is why he took the part-time job. Father said that he had not purposefully started and stopped jobs to evade paying child support, that he had been working for the past thirteen years, and that he had only missed the past few months' payments because he had been out of work dealing with medical issues and had drained his savings to pay for the children's travel expenses to visit him. Father asked to have his child-support obligation lowered due to the expense of the airline tickets.

With regard to the airfare expense, Father explained that he has to pay a $200 fee on top of the airfare because his children fly as unaccompanied minors. Father said that with the fee, it costs approximately $1,000 round trip for his children to visit him. Father said that in addition to Thanksgiving, Christmas, spring break, and summer, he tries to pick a couple of weekends to fly the children to California.

During cross-examination by Mother's counsel, Father admitted that he had not produced any of his bank statements, tax returns, or paystubs through initial disclosures. Father later clarified that he had submitted paystubs the year before the modification hearing but that they were related to a job that he no longer had. Father's delivery job, which he had started two months prior to the modification

6

hearing, paid $16 per hour for thirty to thirty-four hours per week. Father testified that he was receiving $3,000 per month in Veterans' Affairs disability benefits. Father said that he had purchased a $500,000 home in 2022 through a VA loan that allowed him to put $0 down with a thirty-year mortgage. Father thought that his monthly house payment was approximately $2,500.

During cross-examination by counsel for the Attorney General, Father testified that he was an aircraft maintenance and mechanic specialist while he was in the Air Force and that he had worked on the same type of aircraft while he was a contractor deployed with Lockheed.[3] Father said that jobs in his specialty are readily available in the civilian sector and that he had applied for such positions, but because of how tough it is on his body and because he had succumbed to a lot of injuries,[4] he was "trying to transition careers to something else right now." Father said that he had received a 90% disability rating from the VA. Father explained that because there was an order from the Attorney General garnishing money from his paychecks for child support, he assumed that "they" already had his paystub information and that he therefore did not need to bring it to court.

---

[3]The trial court asked Father how much he had made at Lockheed, and he said that he had made $30 to $31 per hour and that he had received overtime for the forty-four hours per week that he had worked beyond the normal forty-hour work week.

[4]Father listed gastrointestinal issues, sleep issues, and the knee injury (which causes his knee to give out or lock up) as impediments to his ability to work as an aircraft mechanic.

Counsel for the Attorney General estimated that Father would spend approximately $4,750 on five trips for his kids to visit him during the year, averaging out to $392.83 per month; Father agreed with these estimates. Father agreed that he was asking the trial court to deviate from ordering him to pay the amount in the child-support guidelines or to have Mother pay for half the airfare and to take into consideration that he had paid half of the children's registration fees for extracurricular activities. Father did not present any paperwork to support the $80 or $90 that he said he had paid for such fees.

Father agreed that if the Attorney General's documentation showed that as of September 30, 2022, he had a $1,437.08 child-support arrearage and a $1,111.24 medical-support arrearage, then he owed those amounts. Father did not think that he should receive a judgment against him for the medical-support arrearage because he had previously told the trial court that he could not afford to pay the increased amount of cash medical support. Father was not sure if his part-time status contributed to the fact that his children were on Medicaid instead of private insurance but admitted that could be a possibility.[5] Father said that his family had contributed approximately $3,500 to help cover his bills and the travel costs for his children.

In his closing argument, Father explained that due to the cash medical support, the child support, and the cost of airfare, he would not be able to visit his children if

[5]The trial court explained that "the reason the health insurance is $300 is . . . [that Father is] paying back [the State of Texas] for Medicaid." The trial court further explained that the $300 does not go to Mother.

8

the trial court did not grant him some kind of relief. He reiterated that he was "not underemploying [him]self on purpose."

On recross-examination by Mother's counsel, Father admitted that his last day at Lockheed was August 22, 2021. Father was questioned about why he had continued to live in the expensive San Diego area when he no longer worked at Lockheed and could only find part-time work there. Father said that he had already been there for four years and had roots there and that his older stepdaughter wanted to graduate from her school. Father said that it would not be right to uproot his stepchildren again (as they had already moved from Lancaster, California, to Winchester, California) and that the finances involved in moving somewhere else would be too much. The trial court noted that Father had "made a choice" to live there instead of in Texas.

The trial court rendered a final judgment on December 20, 2022. Of note in the judgment, which spans almost forty pages, the trial court ordered Father to pay monthly child support of $1,161 per month beginning November 1, 2020; entered judgments against Father for the child-support arrearage of $1,437.08 and past-due medical support of $1,111.24; ordered Father to pay $300 per month to reimburse the government for health insurance;[6] ordered Father to pay for airfare for the children's

---

[6]The order further states,

IT IS ORDERED that [Father] shall talk with the VA to determine what health benefits are available to the children. If he does not provide a

visits to see him; and awarded Mother a judgment against Father for $7,800 for her attorneys' fees.

Father then perfected this appeal.

### III. Discussion

In his first and third issues, Father appears to argue that the trial court abused its discretion by failing to decrease his child-support obligation and his medical-support obligation and by ordering him to pay the full cost of the children's airfare for their visits to see him in California.[7] Before we can reach those issues, there are several procedural hurdles that Father must clear.

### A. Did Father waive all potential issues through inadequate briefing?

We notified Father by letter dated April 24, 2023, that his brief contained numerous deficiencies, which were detailed in the two-page letter, and he was asked to file an amended brief that complied with the Rules of Appellate Procedure listed in

---

health[-]insurance card by December 1, 2022, he shall resume paying medical support at the rate of $300.00 per month on December 1, 2022. Medical support is abated on November 1, 2022.

[7]Father's second issue challenges "opposing counsel['s] claims of purposeful underemployment," but the modification order does not contain a finding that Father was intentionally underemployed. *Cf. M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *3 n.10 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.) (explaining that record did not support an award of child support based on underemployment under Section 154.066 because (1) the trial court did not make the required express finding that appellant was intentionally underemployed, and (2) Section 154.066 requires proof of the obligor's current earnings before the obligee has the burden to prove that obligor is intentionally underemployed). We therefore overrule this issue.

the letter. Father tendered a "corrected" brief, which still contained deficiencies. We again notified Father by letter dated May 19, 2023, that his brief continued to be deficient. Father tendered another "corrected" brief that remained deficient.

As this court has previously stated,

> A pro se litigant is held to the same standards as a licensed attorney and must comply with applicable laws and rules of procedure. *Hughes v. Armadillo Prop[s]. for Lina Roberts*, No. 03-15-00698-CV, 2016 WL 5349380, at *2 (Tex. App.—Austin Sep[t]. 20, 2016, no pet.) (mem. op.); *Robb v. Horizon Comm[s]. Improvement Ass'n, Inc.*, 417 S.W.3d 585, 590 (Tex. App.—El Paso 2013, no pet.). Were this not the case, pro se litigants would be given an unfair advantage over parties represented by counsel. *Hughes*, 2016 WL 5349380, at *2; *Robb*, 417 S.W.3d at 590.

> Among the rules of procedure with which a litigant—even one acting pro se—must comply are those setting forth the requirements for appellate briefs. *See* Tex. R. App. P. 38.1–38.3.

*Ex parte D.K.*, No. 02-22-00020-CV, 2022 WL 15075939, at *2 (Tex. App.—Fort Worth Oct. 27, 2022, pet. denied) (mem. op.). Of particular relevance here, an appellant's brief must, among other things, contain a statement of pertinent facts "supported by record references"; "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"; and, in a civil case, include an appendix. *See* Tex. R. App. P. 38.1(g), (i), (k). Father's corrected brief that was filed on June 2, 2023, fails to contain any record references or any cites to case law[8] and does not have an appendix.[9] Based on these briefing

---

[8]The brief makes reference to four broad statutes: Texas Family Code Section 153.001 ("Public Policy"), Section 153.002 ("Best Interest of Child"), Section 154.123

11

deficiencies, we hold that Father waived all of his issues by inadequate briefing. *See D.K.*, 2022 WL 15075939, at *2.

## B. Did Father follow the procedure for designating a partial reporter's record?

Even if we were to set aside Father's briefing defects, we must still overrule his first and third issues because he did not comply with Texas Rule of Appellate Procedure 34.6(c)(1) for requesting a partial record. Father's failure to follow the partial-record procedure means that he is not entitled to the Rule 34.6(c)(4) presumption—that the designated partial reporter's record constitutes the entire record for purposes of reviewing the stated issues—and instead requires us to presume that the undesignated portions of the record support the trial court's judgment.

As explained by the Houston First Court of Appeals,

> An appellant can request a partial reporter's record and "include in the request a statement of points or issues to be presented on appeal and will then be limited to those points or issues." Tex. R. App. P. 34.6(c)(1). A general notice of an appellant's stated points or issues is insufficient to satisfy Rule 34.6(c)(1)'s requirements. *See Wheeler v. Greene*, 194 S.W.3d 1, 5 (Tex. App.—Tyler 2006, no pet.); *Gardner v. Baker Botts, L.L.P.*, 6 S.W.3d 295, 297 (Tex. App.—Houston [1st Dist.] 1999, pet.

---

("Additional Factors for Court to Consider"), and Section 154.125 ("Application of Guidelines to Net Resources").

[9]Father included a section labeled "Appendix A" in which he provided his own three-sentence summary of the trial court's thirty-nine-page order and a section labeled "Appendix B" in which he included a one-sentence statement listing the sections of the Family Code that he had mentioned in his brief. He did not attach any documents to his brief. *See* Tex. R. App. P. 38.1(k)(1)(A), (C) (requiring in civil cases an appellant's brief to contain a copy of the trial court's judgment or other appealable order from which relief is sought and the text of any statute on which the argument is based).

denied) (construing former Rule of Appellate Procedure 53(d), predecessor to Rule 34.6(c)). The points or issues should be described with some particularity. *See Gardner*, 6 S.W.3d at 297; *see also Wheeler*, 194 S.W.3d at 5 (holding that appellant's issues were "so broad in scope" that court could not "conclude that [appellant] complied with Rule 34.6(c)").

The statement of points or issues limits the issues to be presented on appeal and puts the other parties on notice that the appellate court will presume the designated portions of the record constitute the entire record for reviewing the stated issues. Tex. R. App. P. 34.6(c)(1) (requiring that statement of points or issues be included with request for partial reporter's record and stating that appellant "will then be limited to those points or issues"); *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.). This allows the other parties an opportunity to request any additional portions of the record [that] they believe are relevant to the issues presented. *Mason*, 154 S.W.3d at 819; *see also* Tex. R. App. P. 34.6(c)(2) (providing that other parties may designate additional exhibits and portions of testimony to be included in record). . . .

When an appellant properly requests a partial reporter's record pursuant to Rule 34.6(c), we must "presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." Tex. R. App. P. 34.6(c)(4). This presumption applies "even if the statement includes a point or issue complaining of the legal or factual insufficiency of the evidence to support a specific factual finding identified in that point or issue." *Id.* However, nothing in Rule 34.6(c) relieves an appellant of [his] ultimate burden to bring forth a record showing reversible error. *See Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990)) (providing that appellant bears burden to provide sufficient record to show trial court's error).

*Garcia v. Sasson*, 516 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

In this case, although Father requested that the court reporter prepare a partial reporter's record, he did not designate the issues to be presented on appeal, and he

13

makes no argument that the record before us contains such designation. *See* Tex. R. App. P. 34.6(c)(1). Because we have a partial reporter's record—containing only Father's testimony, the Attorney General's exhibit charting Father's child-support and medical-support payments, and Mother's exhibit setting forth numerous messages between the parties on the parenting app—but no statement from Father designating the issues to be presented on appeal, we must presume that the missing portions of the reporter's record support the trial court's judgment. *See Wheeler*, 194 S.W.3d at 5 (rejecting appellant's legal-sufficiency challenge on appeal when he filed a partial reporter's record but did not designate the issues to be presented on appeal—thus giving rise to a presumption that the omitted portions of the record supported the trial court's judgment). Accordingly, even if Father had not waived his issues, we would overrule Father's first and third issues.

## C. Does the final order require sua sponte modification?

Although we have overruled each of the issues that Father raised, before disposing of the appeal, we modify the judgment to correct clerical errors that were discovered when reviewing the final order. There are three places in the final order where the wording describing the child-support arrearage does not match the stated numeric amount:

> The Court finds and confirms that [Father] owes unpaid child support to [Mother] in the amount of **One Thousand** *One Hundred and Forty-***Seven dollars and Eight cents ($1,437.08)** as of November 11, 2022.

14

> A cumulative judgment for child[-]support arrearages, including interest, is GRANTED against [Father] and in favor of [Mother] in the amount of **One Thousand *One Hundred and Forty*-Seven dollars and Eight cents ($1,437.08),** such judgment bearing interest at 6% per annum from the date of this Final Order in Suit to Modify Parent[–] Child Relationship is signed, for which [let] execution [issue].
>
> . . . When all current child support ceases, [Father] is ORDERED to pay to [Mother] $1,261.00 each month with the first payment of $1,261.00 being due and payable on first of the month following the emancipation of the first child, and a like payment of $1,261.00 being due and payable on the first day of each month thereafter until the cumulative judgment for child[-]support arrearages in the amount of **One Thousand *One Hundred and Forty*-Seven dollars and Eight cents ($1,437.08)** is paid in full. [Emphasis added in italics.]

Because Father conceded during the modification hearing that he owed $1,437.08 in unpaid child support and because we may correct clerical errors, we modify the above paragraphs from the final order to delete the bolded, underlined portions and replace them with the following so that the wording matches the numeric amount: **One Thousand Four Hundred Thirty-Seven dollars and Eight cents ($1,437.08)**. *See In re R.H.*, No. 02-20-00396-CV, 2021 WL 2006038, at *8 n.8 (Tex. App.—Fort Worth May 20, 2021, no pet.) (mem. op.). *See generally* Tex. R. App. P. 43.2(b).

## IV. Conclusion

Having overruled Father's three issues but having modified the final order, we affirm as modified the trial court's December 20, 2022 final order.

/s/ Dabney Bassel
Dabney Bassel
Justice

Delivered: October 5, 2023

15